No. 31,581

WOLCOTT-LINCOLN, INC., *Appellant*, v. B. S. HUFF et al., *Appellees.*

(31 P. 2d 13.)

Opinion filed April 7, 1934.

*W. C. Gould, George R. Gould,* both of Dodge City, *W. E. Broadie,* of Kinsley, *H. W. Borders, H. W. Borders, Jr., Depuy G. Warrick* and *Wilfred Wimmell,* all of Kansas City, Mo., for the appellant.

*A. L. Moffat* and *John A. Etling,* both of Kinsley, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action for $2,680.34, alleged to be due to plaintiff for payments of commissions and advances arising out of trades in grain futures. The plaintiff made a number of contracts with the defendant company in Lewis, during a period of about three years, and handled approximately 300,000 bushels of grain each year. The plaintiff had a branch office in Hutchinson, and it was through this office that the contracts were made. The plaintiff company was a member of the Kansas City and Chicago boards of trade, and the contracts were made with reference to the rules and methods of the chamber of commerce or board of trade, and were made under the authority of the act of congress known as the future trading act. No grain was delivered under the contracts, and no delivery of grain was accepted prior to the closing out of the contracts. One of the defendants testified that it was not his intention to actually deliver grain under the contracts. Demand was made for the payment of money, which demand has not been complied with, and action therefor was brought.

The answer of the defendants was that the contracts were gambling transactions, and it was understood and contemplated by all parties that there would be no actual delivery of grain under them, and that settlements were to be made upon the transactions upon the payment of the difference between the contract price and the market price. The defendants had three elevators in different places and were doing an ordinary elevator business. The transactions, plaintiff alleges, occurred in the following manner: The manager of the defendants' business at Lewis would telephone the Hutchinson office ordering plaintiff to buy or sell grain for the defendants, this order would be telegraphed to Kansas City, where it would either be executed on the Kansas City board of trade or telegraphed to Chicago for execution. All the orders received by plaintiff from the defendants were executed on the contract markets in accordance with the rules of the board of trade. A record was kept showing when the grain was bought, the amount purchased, the price, and the person from whom the grain was purchased. On the day on

which the contract arose an order of the defendants was received, the plaintiff would send the defendants a confirmation and the amount of money due was stated. At the close of the transaction the record showed defendants owing a balance of $2,680.34 to the plaintiff.

There is no direct testimony that plaintiff and defendants agreed that there should be no delivery, should the delivery date be reached, except Dugger's testimony that it was not his intention to actually deliver grain. Each purchase and sale was executed in accordance with the rules of a contract market. At the close of the testimony the plaintiff moved the court to direct a verdict for the amount due with interest thereon from a fixed date, for the reason that the uncontradicted testimony showed no defense to the plaintiff's claim.

Instructions were asked by each party and, in lieu thereof, the court gave a series of instructions. Under these instructions a verdict was rendered for the defendants. Motion for a new trial was overruled, and plaintiff appeals.

The principal contention of plaintiff is that there was no substantial proof of an intention of the parties not to deliver grain, and the burden is upon the defendant to show that fact, and that it failed to sustain the contention in the proof that was made.

Defendants contend that the facts and circumstances show that the transactions were wagers and that the circumstances show that no delivery had been made or was expected to be made, and that this was sufficient testimony to warrant the finding of the jury that they were gambling contracts.

We are unable to find any proof that the contracts, when made, were not to be executed by the delivery of the wheat except that of one of the defendants, Dugger, who testified that it was not his intention that delivery would be made. The contract in its terms provided for fulfillment, and the fact that one of the parties may not have contemplated that the contracts were to be executed by a delivery does not of itself render the transaction illegal. Each purchase or sale as was made on instructions from the defendants, was set out at length and provided for fulfillment at fixed times; they were made in accordance with the rules of a contract market, and there was no failure to comply with the rules of the board of trade.

It is contended and shown that the transactions involved were made under the rules providing for delivery and there is nothing to show that the plaintiff at least did not contemplate delivery of the

wheat bought or sold. The undisclosed intention of one of the parties that he did not contemplate delivery of wheat will not render the transaction illegal nor defeat a recovery by the plaintiff. (*State, ex rel., v. Rosenbaum Grain Co.,* 115 Kan. 40, 222 Pac. 80; *Goffe & Carkener v. Henneberger,* 132 Kan. 211, 294 Pac. 672.)

It is practically conceded that unless both parties unite in the intention that in a contract made for delivery there shall be no delivery, but merely a settlement of differences between the contract price and the market price at the time fixed for delivery, the contract is not invalid. The personal and private purpose of Dugger that there should be no delivery of the wheat which the other party had not consented to or concurred in, will not warrant a holding that the contract is a gambling transaction and therefore void. Both parties must share in such intention to make it a wagering and illegal contract. The validity of the contract depends on the intention of the parties at the time it was made.

Defendants insist that while there was a lack of direct evidence it was the real intention of both parties that the contract should not be fulfilled by delivery, and that this was shown by the quantities of grain bought and sold in the transactions with plaintiff. Here it appears that defendants were grain dealers with elevators in several counties in a district of the state recognized to be one of the richest wheat-producing regions, wherein vast amounts of wheat were produced and available for disposition.

Besides the transactions of the defendants for future delivery they bought grain for cash, and the dealings in futures, it appears, ran over a period of three years. The contracts were closed out in every case before the time fixed for settlement. It appears that some time before the date of delivery fixed in the contract, the plaintiff would phone or in some other way notify defendants that the time was approaching for a close of the transaction. Defendants would then arrange a new deal with plaintiff and close up the earlier transaction and all deals were closed before the time fixed for delivery.

There was no testimony that at these times or any other time plaintiff intimated or recognized that no delivery of the grain would be required if the delivery date should be reached. At the close of the evidence plaintiff asked the court to direct a verdict in its favor for the reason that the uncontradicted evidence showed no defense of defendants to plaintiff's claim. This motion was refused, although all the transactions and their closing up were introduced,

and a statement of the settlements made and the amount due if the claim was valid was recognized by the defendants as correct. Payment of the amount of the plaintiff's claim was promised, which has not since been made.

Our conclusion is that the contracts were valid on their faces, and defendants' allegations that they were rendered invalid because delivery of the wheat was not contemplated nor intended by the parties, was not established by the evidence. The fact that one of the defendants stated that he did not intend there should be a delivery did not, as we have seen, sustain the burden which rested upon defendants to establish the invalidity of the contracts.

The judgment must therefore be reversed, and the cause remanded with directions to sustain plaintiff's motion directing a verdict for the plaintiff for the amount claimed. It is so ordered.